Richard S. Yusem, P.A.
P.O. Box 696
31 E. High Street
Somerville, NJ 08876
(908) 526-4900
Attorneys for Creditor CCT Enterprises Corporation

| IN RE: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
|---|---|
| SEVEN HILLS, INC., | |
| Debtor(s) | Chapter 11 |
| | Case No. 08-33642 MBK |
| | CERTIFICATION IN SUPPORT OF MOTION TO LIFT STAY |

The certification of Susan Chung states as follows:

1. I am the Vice President of the movant, CCT Enterprises Corporation. Unless set forth to the contrary, the statements made herein are based upon my own personal knowledge.

2. CCT Enterprises Corporation ("CCT") owns a shopping plaza at Raritan Avenue and 5th Street in Highland Park NJ.

3. In October, 1998 CCT leased store #1 in the shopping plaza to the debtor, Seven Hills, Inc. A copy of that Lease is attached hereto and marked Exhibit A.

4. The debtor has been habitually late in the payment of its rent and summary dispossess actions were filed on:

   (a) September 26, 2002;
   (b) March 19, 2003;
   (c) November 14 2005;
   (d) May 11, 2007;
   (e) February 1, 2008; and
   (f) November 8, 2008

5. The first five dispossess actions were terminated when the debtor brought the rent current. The last action resulted in a consent to enter judgment and authorized the issuance of a

warrant for removal, but before the warrant issued, the debtor filed the proceeding in the above matter.

6. The lease in this matter expires by its terms on March 31, 2009.

7. Paragraph 39 of the Lease covers the tenant's rights to renew for an additional ten (10) year period. The terms expressly require that at the time of renewal the tenant cannot be in breach of any of the tenant's obligations under the lease.

8. The tenant attempted to renew the lease in October, 2008, but was advised by the landlord that the notice of intent to renew was ineffective as the tenant was in breach of its obligations to pay rent and other charges.

9. At the time of the filing of the petition on November 26, 2008, the debtor was in default of the lease and in arrears in the amount of $21,489.82

10. Since the filing of the petition herein, the debtor paid the rent and CAM charges due for December, 2008 and January, 2009, however, I did not deposit the debtor's check to cover February 2009's base rent of $6,065.21 plus CAM charge of $1,546.63 as I was advised by the bank that there were insufficient funds to cover it. On advice of counsel I have since submitted the check and will allow the bank to return it for insufficient funds.

11. In light of the debtor's habitual failure to pay rent pre-petition, the debtor's continuing failure to pay rent post-petition, and the fact that this lease expires by its own terms on March 31, 2009 and cannot be renewed, the debtor has no equity in this leased property and same is not necessary for a reorganization. Moreover, the debtor continues as a debtor-in possession in this matter and has not assumed the Lease at issue. Therefore, pursuant to 11 USC §365(d)(4)(A) the debtor-in possession must surrender the subject premises to the landlord no later than March 26, 2009 (120 days from the date of the order for relief in this matter).

      12. I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                                     /s/  Susan Chung  
                                                     Susan Chung

Dated:  February 20, 2009

# EXHIBIT A

# LEASE AGREEMENT
## Business and Commercial

This Lease Agreement is made on October _____, 1998
BETWEEN  CCT ENTERPRISES CORPORATION, a corporation of New Jersey

whose address is P.O. Box 4336, Highland Park, New Jersey, 08904

herein designated as the "Landlord,"

AND  SEVEN HILLS, INC., a corporation of New Jersey

whose address is 100 Menlo Park Plaza, Suite 318, Edison, New Jersey, 08817

herein designated as the "Tenant."

1. **Premises.** The Landlord does hereby lease to the Tenant and the Tenant does hereby rent from the Landlord, the following described premises: Store #1 containing 2,840.89 square feet located at the Retail Plaza, Raritan Avenue and 5th Street, Highland Park, N.J.

2. **Term.** For a term of Ten (10) Years commencing on November 15, 1998 and ending on November 14, 2008.

3. **Use.** To be used and occupied only and for no other purpose than a sit-down restaurant containing not more than 82 seating spaces. The Tenant shall not, and will not allow others, to occupy or use the leased premises or any part thereof for any purposes other than as herein limited, nor for any purpose deemed unlawful, disreputable, or extra hazardous, on account of fire or other casualty. Tenant shall also have the right to use the on-site sidewalks, parking spaces, and other common amenities in common with the Landlord and other Tenants of the Retail Plaza. The Landlord reserves the right to implement assigned on-site parking spaces for use of Tenant and Tenant's employees in order to reserve the most convenient on-site parking spaces for the common use of customers of all Tenants of the Retail Plaza.

4. **Rent.** (a) The Tenant agrees to pay the basic rent for the first year of the Lease based on $18.00 per square foot, triple net, or an annual rent for the first year of $51,136.02 ($4,261.34 per month). The first year's annual rent shall be increased by 4% each year during the remaining term of the Lease. Therefore, the annual rents for the next nine (9) years of the Lease shall be as follows:

|  |  |  |
|---|---|---|
| Second Year | $53,181.46 | ($4,431.79 per month) |
| Third Year | $55,308.72 | ($4,609.06 per month) |
| → Fifth Year | $57,521.06 | ($4,793.42 per month) |
| Sixth Year | $59,821.90 | ($4,985.16 per month) |
| Seventh Year | $62,214.78 | ($5,184.55 per month) |
| Eighth Year | $64,703.37 | ($5,391.95 per month) |
| Ninth Year | $67,291.51 | ($5,607.62 per month) |
| Tenth Year | $69,938.17 | ($5,828.18 per month) |
|  | $72,782.50 | ($6,065.20 per month) |

(b) In addition to the basic rent, Tenant shall also pay the additional rent items specified in Paragraphs 40th and 41st on the Rider attached hereto.

(c) Tenant shall pay the basic rent and items of additional rent to Landlord in monthly installments, in advance, on the first day of each month, commencing on the date specified in Paragraph 36th on the Rider attached hereto, except that if the date upon which such payments commences is other than the first day of the month, the basic rent and items of additional rent will be pro-rated for the first partial month, and full monthly payments shall commence on the first day of the month following said commencement date.

5. **Repairs and Care.** The Tenant has examined the premises and has entered into this Lease without any representation on the part of the Landlord as to the condition thereof. The Tenant shall take good care of the

-1-

premises and shall at the Tenant's own cost and expense, make all repairs, including painting, decorating, and shall maintain the premises in good condition and state of repair, and at the end or other expiration of the term hereof, shall deliver up the rented premises in good order and condition, wear and tear from a reasonable use thereof, and damage by the elements not resulting from the neglect or fault of the Tenant excepted. The Tenant shall neither encumber nor obstruct the sidewalks, driveways, yards, entrances, hallways and stairs, but shall keep and maintain the same in a clean condition, free from debris, trash, refuse, snow and ice.

6. **Glass/Damage.** In case of the destruction of or any damage to the glass in the leased premises, or the destruction of or damage of any kind whatsoever to the said premises, caused by the carelessness, negligence or improper conduct on the part of the Tenant or the Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors, the Tenant shall repair the said damage or replace or restore any destroyed parts of the premises, as speedily as possible, at the Tenant's own cost and expense.

7. **Alterations and Improvements.** No alterations, additions or improvements shall be made, and no climate regulating, air conditioning, cooling, heating or sprinkler systems, television or radio antennas, heavy equipment, apparatus and mixtures, shall be installed in or attached to the leased premises, without the written consent of the Landlord. Unless otherwise provided herein, all such alterations, etc., when made, installed in or attached to the said premises, shall belong to and become the property of the Landlord and shall be surrendered with the premises and as part thereof upon the expiration or sooner termination of this Lease, without hindrance, molestation or injury. Any personal property, trade fixtures, refrigeration equipment, cooking equipment, food preparation tables, appliances, store fixtures, signs, and decorative treatments, which are not permanently affixed to the leased premises may be removed without structural damage or alteration to the leased premises, may be removed by the Tenant upon termination of this Lease Agreement, under the following terms and conditions:

(a) Tenant shall not be in default of any provisions of this Lease at the time of removal;

(b) If removal causes any holes, scratches, or marks in the ceilings, walls, floors, windows, or doors of the demised premises, Tenant shall patch, repair, and paint such removal sites so that the interior of the demised premises are left in original "vanilla box" condition;

(c) If any of such personal property, trade fixtures, refrigeration equipment, cooking equipment, food preparation tables, appliances, store fixtures, signs, and decorative treatments have been attached to electric, plumbing, vent, or utility installations of the demised premises, such utility connections shall be disconnected in accordance with all building codes and regulations, and the demised premises shall be left in original "vanilla box" condition;

(d) At Landlord's option, Landlord may request the Tenant to leave any of such utility connections intact, safely and legally capped or secured, for use by subsequent parties.

8. **Signs.** The Tenant shall not place nor allow to be placed any signs, upon, in or about the said premises, except as may be consented to by the Landlord in writing. In case the Landlord or the Landlord's agents, employees or representatives shall deem it necessary to remove any such signs in order to paint or make an repairs, alterations or improvements in or upon said premises or any part thereof, they may be so removed, but shall be replaced at the Landlord's expense when the said repairs, alterations or improvements shall have been completed. Any signs permitted by the Landlord shall at all times conform with all municipal ordinances or other laws and regulations applicable thereto.

9. **Utilities.** The Tenant shall pay when due all the rents or charges for water or other utilities used by the Tenant, which are or may be assessed or imposed upon the leased premises or charged to the Landlord by the suppliers thereof during the term hereof, and if not paid, such rents or charges shall be added to and become payable as additional rent with the installment of rent next due or within 30 days of demand therefor, whichever occurs sooner.

10. **Compliance with Laws etc.** The Tenant shall promptly comply with all laws, ordinances, rules, regulations, requirements and directives of all Governmental or Public Authorities and of all their subdivisions, applicable to and affecting the said premises, their use, and occupancy, and shall promptly comply with all orders, regulations, requirements and directives of the Board of Fire Underwriters or similar authority and of any insurance companies which have issued or are about to issue policies of insurance covering the said premises and its contents, for the prevention of fire or other casualty, damage or injury, at the Tenant's own cost and expense.

-2-

11. **Assignment.** The Tenant shall not, without the written consent of the Landlord, which consent will not be unreasonably withheld, assign, mortgage or hypothecate this Lease, nor sublet or sublease the premises or any part thereof. If Tenant is a corporation, partnership, or other business entity, the transfer of beneficial ownership of 50% or more of the outstanding corporate stock, partnership interests, or other evidence of beneficial interest shall constitute an assignment for the purposes of this paragraph.

12. **Liability Insurance.** The Tenant, at Tenant's own cost and expense, shall obtain or provide and keep in full force for the benefit of the Landlord, during the term hereof, general public liability insurance, insuring the Landlord against any and all liability or claims of liability arising out of, occasioned by or resulting from any accident or otherwise in or about the leased premises for injuries to any persons for limits of not less than $500,000.00 for property damage, $1,000,000.00 for injuries to one person and $2,000,000.00 for injuries to more than one person, in any one accident or occurrence. The insurance policies shall be with companies authorized to do business in this State and shall be delivered to the Landlord, together with proof of payment, not less than fifteen (15) days prior to the commencement of the term hereof or of the date when the tenant shall enter in possession, whichever occurs sooner. At least fifteen days prior to the expiration or termination date of any policy, the Tenant shall deliver a renewal or replacement policy with proof of the payment of the premium therefor.

13. **Indemnification.** The Tenant also agrees to and shall hold harmless and indemnify the Landlord from and for any and all payments, expenses, costs, attorney fees and from and for any and all claims and liability for losses or damage to property or injuries to persons occasioned wholly or in part by or resulting from any acts or omissions by the Tenant or the Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors, or for any cause or reason whatsoever arising out of or by reason of the occupancy or business of the Tenant.

14. **Mortgage Priority.** This Lease shall not be a lien against the said premises with respect to any mortgages that may hereafter be placed upon said premises. The recording of such mortgages shall have preference and be superior and prior in lien to this Lease, irrespective of the date of recording. The Tenant agrees to execute any instruments, without cost, which may be deemed necessary, to further effect the subordination of this Lease to any such mortgages. A refusal by the Tenant to execute such instruments is a violation and shall entitle the Landlord to cancel this Lease.

15. **Condemnation/Eminent Domain.** If any portion of the premises of which the leased premises are a part shall be taken under eminent domain or condemnation proceedings, or if suit or other action shall be instituted for the taking or condemnation thereof, or if in lieu of any formal condemnation proceedings or actions, the Landlord shall grant an option to purchase and or shall sell and convey the said premises or any portion thereof, to the governmental or other public authority, agency, body or public utility, seeking to take said land and premises or any portion thereof, then this Lease, at the option of the Landlord, shall terminate, and the term hereof shall end as of such date as the Landlord shall fix by notice in writing. The Tenant shall have no claim or right to claim or be entitled to any portion of any amount which may be awarded as damages or paid as the result of such condemnation proceedings or paid as the purchase price for such option, sale or conveyance in lieu of formal condemnation proceedings. All rights of the Tenant to damages, if any, are hereby assigned to the Landlord, but nothing herein shall preclude the Tenant from maintaining any claim or action which it may have against the condemning authority under applicable condemnation laws for the value of its personal property, fixtures, and equipment, for loss or damage to Tenant's business, or for relocation expenses, which are separate and apart from, and are not included in, the Landlord's claim for the taking of the demised premises and the remainder of Landlord's building and lands. The Tenant agrees to execute and deliver any instruments, at the expense of the Landlord, as may be deemed necessary to expedite any condemnation proceedings or to effectuate a proper transfer of title to such governmental or other public authority, agency, body or public utility seeking to take or acquire the said lands and premises of any portion thereof. The Tenant agrees to vacate the said premises, remove all the Tenant's personal property therefrom and deliver up peaceable possession thereof to the Landlord or to such other party designated by the Landlord. The Tenant shall repay the Landlord for such costs, expenses, damages and losses as the Landlord may incur by reason of the Tenant's breach hereof.

16. **Fire and Other Casualty.** In case of fire or other casualty, the Tenant shall give immediate notice to the Landlord. If the premises shall be partially damaged by fire, the elements or other casualty, the Landlord shall repair the same as speedily as practicable, but the Tenant's obligation to pay the rent hereunder shall not cease. If, in the opinion of the Landlord, the premises are so substantially damaged as to render them untenantable, then the rent shall cease until such time as the premises shall be made tenantable by the Landlord. However, if, in the opinion of the Landlord, the premises are so substantially damaged that the Landlord decides not to rebuild, then the rent shall be paid up to the time of such destruction and thenceforth this Lease shall come to an end. However, the provisions of this clause shall not

-3-

become effective or be applicable, if the fire or other casualty and damage shall be the result of the carelessness, negligence or improper conduct of the Tenant or the Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors. In such case, the Tenant's liability for the payment of the rent and the performance of all the covenants, conditions and terms hereof on the Tenant's part to be performed shall continue and the Tenant shall be liable to the Landlord for the damage and loss suffered by the Landlord. If the Tenant shall have been insured against any of the risks herein covered, then the proceeds of such insurance shall be paid over to the Landlord to the extent of the Landlord's costs and expenses to make the repairs hereunder, and such insurance carriers shall have no recourse against the Landlord for reimbursement.

**17. Reimbursement of Landlord.** If the Tenant shall fail or refuse to comply with any of the terms and conditions of this Lease, the Landlord may carry out and perform such conditions at the cost and expense of the Tenant, which amounts shall be payable on demand to the Landlord. This remedy shall be in addition to such other remedies as the Landlord may have by reason of the breach by the Tenant of any of the terms and conditions of this Lease.

**18. Increase of Insurance Rates.** If for any reason it shall be impossible to obtain fire and other hazard insurance on the buildings and improvements on the leased premises, in an amount and in the form and in insurance companies acceptable to the Landlord, the Landlord may, at any time, terminate this Lease, upon giving to the Tenant fifteen (15) days' notice in writing of the Landlord's intention so to do. Upon the giving of such notice, this Lease shall terminate. If by reason of the use to which the premises are put by the Tenant or character of or the manner in which the Tenant's business is carried on, the insurance rates for fire and other hazards shall be increased, the Tenant shall upon demand, pay to the Landlord, as rent, the amounts by which the premiums for such insurance are increased.

**19. Inspection and Repair.** The Tenant agrees that the Landlord and the Landlord's agents, employees or other representatives, shall have the right to enter into and upon the said premises or any part thereof, at all reasonable hours, for the purpose of examining the same or making such repairs or alterations therein as may be necessary for the safety and preservation thereof. This clause shall not be deemed to be a covenant by the Landlord nor be construed to create an obligation on the part of the Landlord to make such inspection or repairs. Such entry by Landlord shall be made upon reasonable notice to the Tenant, except in emergent situations.

**20. Right to Exhibit.** The Tenant agrees to permit the Landlord and the Landlord's agents, employees or other representatives to show the premises to persons wishing to rent or purchase the same, and Tenant agrees that on and after ninety (90) days next preceding the expiration of the term hereof, the Landlord or the Landlord's agents, employees or other representatives shall have the right to place notices on the front of said premises or any part thereof, offering the premises for rent or for sale; and the Tenant hereby agrees to permit the same to remain thereon without hindrance or molestation.

**21. Removal of Tenant's Property.** Any equipment, fixtures, goods or other property of the Tenant, not removed by the Tenant upon the termination of this Lease, or upon any quitting, vacating or abandonment of the premises by the Tenant, or upon the Tenant's eviction, shall be considered as abandoned and the Landlord shall have the right, without any notice to the Tenant, to sell or otherwise dispose of the same, at the expense of the Tenant, and shall not be accountable to the Tenant for any part of the proceeds of such sale, if any.

**22. Remedies Upon Tenant's Default.** If there should occur any default on the part of the Tenant in the performance of any conditions and covenants herein contained, or if during the term hereof the premises or any part thereof shall be or become abandoned or deserted, vacated or vacant, or should the Tenant be evicted, the Landlord, in addition to any other remedies herein contained or as may be permitted by law, may either by force or otherwise, without being liable for prosecution therefor, or for damages, re-enter, possess and enjoy the said premises. The Landlord may then re-let the premises and receive the rents therefor and apply the same, first to the payment of such expenses, reasonable attorney fees and costs, as the Landlord may have been put to in re-entering and repossessing the same and in making such repairs and alterations as may be necessary; and second to the payment of the rents due hereunder. The Tenant shall remain liable for such rents as may be in arrears and also the rents as may accrue subsequent to the re-entry by the Landlord, to the extent of the difference between the rents reserved hereunder and the rents, if any, received by the Landlord during the remainder of the unexpired term hereof, after deducting the aforementioned expenses, fees and costs; the same to be paid as such deficiencies arise and are ascertained each month.

**23. Termination on Default.** If any of the contingencies set forth in the preceding clause occur, or should the Tenant be adjudicated as bankrupt, insolvent or placed in receivership, or should proceedings be instituted by or against the Tenant for bankruptcy, insolvency, receivership, agreement of composition or assignment for the benefit of creditors,

-4-

or if this Lease or the estate of the Tenant hereunder shall pass to another by virtue of any court proceedings, writ of execution, levy, sale, or by operation of law, the Landlord may, at any time thereafter, terminate this Lease and the term hereof, upon giving to the Tenant, fifteen (15) days' notice in writing, of the Landlord's intention so to do. Upon the giving of such notice, this Lease and the term hereof shall end on the date fixed in such notice as if the said date was the date originally fixed in this Lease for the expiration hereof, and the Landlord shall have the right to remove all persons, goods, fixtures and chattels therefrom, by force or otherwise, without liability for damage, unless, within said fifteen (15) day period, Tenant shall have completely cured the event of default and is once more in full compliance with all terms and conditions of this Lease.

24. **Non-Liability of Landlord.** The Landlord shall not be liable for any damage or injury which may be sustained by the Tenant or any other person, as a consequence of the failure, breakage, leakage or obstruction of the water, plumbing, steam, sewer, waste or soil pipes, roof, drains, leaders, gutters, valleys, downspouts or the like or of the electrical, gas, power conveyor, refrigeration, sprinkler, air-conditioning or heating systems, elevators or hoisting equipment; or by reason of the elements; or resulting from the carelessness, negligence or improper conduct on the part of any other Tenant or of the Landlord or the Landlord's or this or any other Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors; or attributable to any interference with, interruption of, or failure beyond the control of the Landlord, of any services to be furnished or supplied by the Landlord.

25. **Non-Waiver by Landlord.** The various rights, remedies, options and elections of the Landlord, expressed herein, are cumulative. The failure of the Landlord to enforce strict performance by the Tenant of the conditions and covenants of this Lease or to exercise any election or option, or to resort or have recourse to any remedy herein conferred or the acceptance by the Landlord of any installment of rent after any breach by the Tenant, in any one or more instances, shall not be construed or deemed to be a waiver or a relinquishment for the future by the Landlord of any such conditions and covenants, options, elections or remedies, but the same shall continue in full force and effect.

26. **Non-Performance by Landlord.** This Lease and the obligation of the Tenant to pay the rent hereunder and to comply with the covenants and conditions hereof, shall not be affected, curtailed, impaired or excused because of the Landlord's inability to supply any service or material called for herein, by reason of any rule, order, regulation or preemption by any governmental entity, authority, department, agency or subdivision or for any delay which may arise by reason of negotiations for the adjustment of any fire or other casualty loss or because of strikes or other labor trouble or for any cause beyond the control of the Landlord.

27. **Validity of Lease.** The terms, conditions, covenants and provisions of this Lease shall be deemed to be severable. If any clause or provision herein contained shall be adjudged to be invalid or unenforceable by a court of competent jurisdiction or by operation of any applicable law, it shall not affect the validity of any other clause or provision herein, but such other clauses or provisions shall remain in full force and effect.

28. **Notices.** All notices required under the terms of this Lease shall be given and shall be complete by mailing such notices by certified or registered mail, return receipt requested, to the address of the parties as shown at the head of this Lease, or to such other address as may be designated in writing, which notice of change of address shall be given in the same manner.

29. **Title and Quiet Enjoyment.** The Landlord covenants and represents that the Landlord is the owner of the premises herein leased and has the right and authority to enter into, execute and deliver this Lease; and does further covenant that the Tenant on paying the rent and performing the conditions and covenants herein contained, shall and may peaceably and quietly have, hold and enjoy the leased premises for the term aforementioned.

30. **Entire Contract.** This Lease contains the entire contract between the parties. No representative, agent or employee of the Landlord has been authorized to make any representations or promises with reference to the within letting or to vary, alter or modify the terms hereof. No additions, changes or modifications, renewals or extensions hereof, shall be binding unless reduced to writing and signed by the Landlord and the Tenant.

31. **Liens.** If any construction or other liens shall be created or filed against the leased premises by reason of labor performed or materials furnished for the Tenant in the erection, construction, completion, alteration, repair or addition to any building or improvement, the Tenant shall upon demand, at the Tenant's own cost and expense, cause such lien or liens to be satisfied and discharged of record together with any lien claims that may have been filed. Failure so to do, shall entitle the Landlord to resort to such remedies as are provided herein in the case of any default of this Lease, in addition to such as are permitted by law.

-5-

32. **Waiver of Subrogation Rights.** The Tenant waives all rights of recovery against the Landlord or Landlord's agents, employees or other representatives, for any loss, damages or injury of any nature whatsoever to property or persons for which the Tenant is insured. The Tenant shall obtain from Tenant's insurance carriers and will deliver to the Landlord, waivers of the subrogation rights under the respective policies.

33. **Security.** The Tenant has this day deposited with the Landlord the sum of $12,784.00 as security for the payment of the rent hereunder and the full and faithful performance by the Tenant of the covenants and conditions on the part of the Tenant to be performed. Said sum shall be returned to the Tenant, without interest, after the expiration of the term hereof, provided that the Tenant has fully and faithfully performed all such covenants and conditions and is not in arrears in rent. During the term hereof, the Landlord may, if the Landlord so elects, have recourse to such security, to make good any default by the Tenant, in which event the Tenant shall, on demand, promptly restore said security to its original amount. The Landlord shall assign or transfer said security, for the benefit of the Tenant, to any subsequent owner or holder of the reversion or title to said premises, in which case the assignee shall become liable for the repayment thereof as herein provided, and the assignor shall be released by the Tenant from all liability to return such security. This provision shall be applicable to every change in title and does not permit the Landlord to retain the security after termination of the Landlord's ownership. The Tenant shall not mortgage, encumber or assign said security without the written consent of the Landlord.

34. **Conformation with Laws and Regulations.** The Landlord may pursue the relief or remedy sought in any invalid clause, by conforming the said clause with the provisions of the statutes or the regulations of any governmental agency as if the particular provisions of the applicable statutes or regulations were set forth herein at length.

35. **Number and Gender.** In all references herein to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require. All the terms, covenants and conditions herein contained shall be for and shall inure to the benefit of and shall bind the respective parties hereto, and their heirs, executors, administrators, personal or legal representatives, successors and assigns.

**(CONTINUED ON RIDER ATTACHED HERETO AND MADE A PART HEREOF COMMENCING WITH PARAGRAPH 36)**

In Witness Whereof, the parties have set their hands and seals, or caused these presents to be signed by their proper corporate officers and their proper corporate seal to be hereto affixed, the day and year first above written.

Witnessed or Attested by:

_____

                                    _____(Seal)
                                              Landlord

_____

                                    _____(Seal)
                                              Tenant

                                    _____(Seal)
                                              Tenant

## RIDER TO LEASE AGREEMENT DATED OCTOBER    , 1998

**Landlord:** CCT ENTERPRISES CORPORATION, a corporation of New Jersey

**Tenant:** SEVEN HILLS, INC., a corporation of New Jersey

**Premises:** Store #1 - 2,840.89 square feet, Retail Plaza, at Raritan Avenue & 5th Street Highland Park, New Jersey

---

36th: **Commencement of Rental Payments.** Notwithstanding the commencement date of November 15, 1998 set forth in Paragraph 2 of the attached Lease Agreement, Tenant's first monthly payment of basic rent shall not commence until February 1, 1999. During this two and one-half month period, Tenant may occupy the demised premises for the purpose of outfitting and stocking the same in preparation for the opening of business as a restaurant or restaurant/bar. In the event Tenant shall open for business prior to February 1, 1999, basic rent payments shall commence on the date Tenant opens for business. In the event Landlord has not completed construction of the demised premises sufficiently to turn over possession thereof to the Tenant on November 15, 1998, the commencement of Tenant's obligation to pay basic monthly rent payments shall be extended from February 1, 1999 for a period of time equal to the time between November 15, 1998 and the date Landlord is able to deliver possession of the demised premises to Tenant. Notwithstanding the foregoing, Tenant shall be liable for the additional rents described in Paragraphs 40th and 41st hereof from the date Landlord is able to turn over possession of the demised premises to Tenant. All additional rent payments shall be due and payable on the first day of each month in advance together with basic rent payments.

37th: **Additional Use of Premises-Competitive Rental.** Landlord consents to Tenant operating a combined restaurant/bar containing not more than 82 seating spaces, provided Tenant first obtains all zoning and other approvals for such use from the Borough of Highland Park or other governmental authorities having jurisdiction, and Tenant first secures all approvals required by the New Jersey Alcoholic Beverage Commission and the Borough of Highland Park to conduct such use. Landlord agrees not to lease any other store in the Retail Plaza for restaurant use as long as Tenant is operating a restaurant in compliance with the terms of this Lease Agreement. Landlord further agrees not to lease any other store in the Retail Plaza for a bar use as long as Tenant is operating a bar in compliance with the terms of this Lease Agreement.

38th: **Cost of Living Increases.** There shall be no cost of living increases in this Lease Agreement. A 4% per year annual increase has been established for the initial ten (10) year term of the Lease as provided in Paragraph #4 of the Lease Agreement. If the Tenant exercises its option to renew for an additional ten (10) year term, pursuant to Paragraph 39th hereof, the annual rent during the option period will be increased 4% each year as provided in Paragraph 39th(d) hereof.

39th: **Option to Renew:** Tenant is granted the option to renew this Lease for one option period of ten (10) years, subject to the following conditions:

(a) That this Lease is in full force and effect at the expiration of the initial term;

(b) That there is not, at that time, any outstanding default or breach of or under any of the terms of the Lease that Tenant is obliged to perform;

(c) That Tenant gives written notice to the Landlord of its intention to renew at least three (3) months prior to the expiration of the initial rental term.

(d) During the first year of the renewal option period, the annual rent shall be the annual rent payable during the tenth year of the initial term of the Lease, increased by 4%, and payable in equal monthly installments on the first day of each month during the first option year. During the remaining nine (9) years of the option

R-1

period, the annual rent shall be the amount paid during the preceding year increased by 4%, and payable in equal monthly installments on the first day of each month of each successive option year.

(e)    All other terms and conditions of this Lease Agreement shall remain in effect during such renewal term.

40th: **Real Estate Taxes, Sewer Rents, Utility Charges, and Common Facility Charges.** The Tenant shall pay all costs and/or its proportionate share of real estate taxes, sewer rents, utility charges (such as water, gas, and electric), and common facility charges as additional rent during the term of this Lease. Such items of additional rent shall be paid when they become due and payable. Tenant's proportionate share of the real estate taxes and sewer rents shall be paid in monthly installments together with the basic rent installments. Utility charges billed to the Landlord, if any, shall be apportioned to the Tenant by the Landlord, and shall be payable on demand. A copy of the underlying utility bill shall accompany Landlord's apportionment to Tenant. Common facility expenses incurred by the Landlord shall be apportioned to the Tenant and shall be payable on demand. Copies of the invoices for the underlying expenses shall accompany Landlord's apportionment to Tenant. Copies of such tax bills, water rent bills, utility bills and common facility expense invoices shall be conclusive evidence of the amount of such charges and shall be used for the calculation of the amounts to be paid by the Tenant. The Tenant's obligation to pay the amount herein provided shall survive the expiration or earlier termination of this Lease.

"Real Estate Taxes" shall mean all the real estate taxes and assessments, special or otherwise, levied, assessed or imposed for any reason whatsoever by the Federal, state or local governments against or upon the building of which the demised premises forms a part and the land upon which the building is erected. If due to a future change in the method of taxation, any franchise, income, profit or other tax, or other payment shall be levied against the Landlord in whole or in part in substitution for or in lieu of any tax which would otherwise constitute a Real Estate Tax, such franchise, income, profit, or other tax or other payment shall be deemed to be a Real Estate Tax for the purposes hereof.

"Proportionate Share" whenever the term is used, shall be 34.5%, which the parties agree reflects the ratio of the rental square feet of the area rented to Tenant as compared with the total number of rental square feet of the building in which the demised premises are located.

However, if any service or utility provided for is separately billed or separately metered within the building and separately paid by a party other than the Landlord, then the rental square footage so billed or metered shall be subtracted from the denominator and the Tenant's proportionate share for such service and/or utility shall be separately computed, and the base for such item shall not include any charges attributable to said rentable square footage.

"Common Facilities" Common facility shall mean the parking areas, driveways, lawn areas, landscaped areas, hallways, and all other common building and site amenities. Expenses for maintaining such common areas shall include all cleaning, upkeep, maintenance and repair necessary to maintain proper function and condition, including but not limited to, general lawn care and snow removal.

41st: **Fire and Hazard Insurance.** Tenant shall pay to Landlord throughout the term, or any renewal term, as additional rent hereunder its proportionate share of the cost of fire and extended coverage insurance maintained by the Landlord on the building of which the premises are a part. Such insurance costs shall be apportioned to the Tenant by the Landlord and shall be payable on demand. A copy of the underlying insurance invoice shall accompany Landlord's apportionment to the Tenant. Such invoice shall be conclusive evidence of the amount of such insurance charge and shall be used for the calculation of the amounts to be paid by Tenant.

R-2

42nd: **Remedies For Non-Payment of Additional Rent.** All payments other than the basic rent to be made by the Tenant pursuant to this Lease shall be deemed additional rent and, in the event of non-payment thereof, the Landlord shall have all rights and remedies provided for by law for non-payment of rent.

43rd: **Late Payment Charge.** Each installment of the annual rate is due at the office of the Landlord on the first day of the month. If a rental payment, including any payment of additional rent, is not received within ten (10) days of its due date, the Tenant shall pay, in addition to the payment due, an amount equal to ten (10) percent of the amount due. Such amount shall not authorize payment of any installment of rent or additional rent after its due date, and same shall be payable in addition to such other rights and remedies provided by law for non-payment of rent.

44th: **Payment of Rent by Certified Check After Default.** If the Tenant defaults in the payment of rent or additional rent, or the payment of rent or additional rent is by check which is not honored by the bank against which it is drawn, the Landlord, without waiving any rights and remedies provided in this Lease or by law for non-payment of rent, shall have the option to demand payment of all installments of rent or additional rent by certified, bank or teller's check. In addition, Tenant shall pay Landlord, as additional rent, a fee of $25.00 for each check returned or dishonored by Tenant's bank.

45th: **Security Deposits.** Concurrently with the execution of this Lease, Tenant shall deposit $17,045.34 (three months rental, plus one month rental in advance) with Landlord to secure Tenant's obligation to occupy the demised premises. The Landlord will apply one month rental ($4,261.34) to the first month's rent and the remaining three month's rental ($12,784.00) shall constitute the security deposit. The security deposit shall not bear interest to Tenant, shall be held by Landlord in such manner as Landlord may deem appropriate, and may be applied by Landlord in order to cure any default in any of the terms, provisions, or conditions of this Lease. Upon the termination of this Lease, the Security Deposit shall be returned to Tenant by the Landlord, after deducting therefrom any sums owed to Landlord pursuant to provisions of this Lease, provided such termination is not caused by Tenant. In the event Landlord applies the Security Deposit in whole or in part against a default by Tenant, Tenant shall, upon demand by Landlord, deposit sufficient funds to maintain the Deposit in the initial amount. Failure of Tenant to deposit additional funds as security deposit shall constitute a default hereunder and entitle the Landlord to avail itself of the remedies provided in this Lease for non-payment of rent by Tenant. Upon the expiration of the Lease term, Landlord shall return the Security Deposit, or so much as has not been applied in accordance with the provisions hereof, within 30 days of the date when all of Tenant's obligation to pay any Additional rent have been fully paid and satisfied.

46th: **Permits.** The Tenant shall, at its own cost and expense, and upon its own responsibility, apply for and obtain any necessary permits and other licenses for the use, conduct and maintenance of the business to be conducted in the demised premises.

47th: **The Tenant to Keep Premises Clean and In Good Repair.** The Tenant shall take good care of the demised premises, and shall, at its own cost and expense, make all repairs, renovations and decorations of every kind within the demised premises, except structural repairs not due to act of the Tenant, its employees or invitees, and shall keep the walls, ceilings, floors, windows and plumbing thereof clean, in good repair and in sanitary condition, and at the end or earlier termination of this Lease, the Tenant shall deliver the demised premises in good order or condition, damages by the elements excepted. The Tenant shall, at its own cost and expense, on a regular basis, employ a reputable cleaning service and exterminating company, both of which shall be subject to Landlord's approval.

48th: **Square Footage.** The Tenant acknowledges that no representations have been made by the Landlord or anyone acting on behalf of the Landlord as to the amount of square footage of the demised premises, and Tenant relies on its own evaluation thereof.

R-3

**49th: Waiver by Tenant of Claim for Money Damages.** The Tenant hereby waives, to the maximum extent permitted by law, any claim for money damages it may have arising by reason of any claimed breach by the Landlord of its obligations under this Lease, nor shall the Tenant claim any such money damage by way of setoff, counterclaim or defense.

**50th: Partial Invalidity.** In case any provisions or portion of a provision of this Lease should be held to be invalid or illegal and/or if any provisions or portion of a provision of this Lease under certain circumstances could not be held valid or legal, the invalidity or illegality shall be limited to the invalid portion or invalid provision or to the circumstances in which the disability exists as if the invalid or illegal portion or invalid or illegal circumstances were not in the Lease.

**51st: Broker.** Tenant represents to Landlord that no broker other than Renaissance Properties, Inc. was engaged by it in connection with this Lease and Tenant agrees to indemnify and hold Landlord harmless from any and all claims of brokers arising out of or in connection with the negotiation of or the entering into this Lease to the extent inconsistent with Tenant's representation herein.

**52nd: The Landlord's Liability.** The obligation of the Landlord under this Lease shall not be binding upon the Landlord after the sale, conveyance, assignment or transfer by such Landlord (or upon any subsequent landlord after the sale, conveyance, assignment or transfer by such subsequent landlord) of its interest in the building or the land upon which it is erected, as the case may be, and in the event of any such sale, conveyance, assignment or transfer, the Landlord shall be, and hereby is entirely freed and relieved of all covenants and obligations of the Landlord; provided such transferee assumes the obligations of the Landlord hereunder.

**53rd: Landlord's Construction.** Landlord will complete construction of walls, drop-ceilings, bathroom, and electrical, plumbing, lighting, and air-conditioning systems, all as specified in the building plans, prior to the Lease commencement date.

**54th: Confidentiality.** The terms and provisions of this Lease shall remain confidential between the parties and shall not be disclosed or disseminated to other parties without the prior written consent of the other party; prospective purchasers, mortgagees, and others with a legitimate business interest excepted. This Lease Agreement shall not be recorded or lodged for record in any public office without the prior written consent of the other party.

**55th: Conflict Between Rider and Lease.** If and to the extent that any of the provisions of this Rider are in conflict or are otherwise inconsistent with any of the provisions of the form Lease Agreement (Paragraphs 1 through 35), whether or not such inconsistency is expressly noted in this Rider, the provisions of this Rider shall control and prevail.

**56th: Applicable Law.** This Lease shall be governed by and construed in accordance with the laws of the State of New Jersey and applicable to agreements executed and to be wholly performed within such State.

CCT ENTERPRISES CORPORATION,
a corporation of New Jersey

By _____
President

ATTEST:

_____, Secretary

ATTEST:
_____
, Secretary

SEVEN HILLS, INC., a corporation of New Jersey

By _____
President, Tenant

R-4

R-5

## PERSONAL GUARANTEES

Hasan Refik Gedlec and Ramazan Omur Erim residing at _____ and _____, respectively, being interested in the operations and success of the Tenant's business, hereby personally and unconditionally guarantee to the Landlord, its heirs, successors, and assigns, the full and faithful performance of each and every term and condition of this Lease Agreement by the named Tenant as if they, the Guarantors, were each individually named as Tenants in this Lease Agreement.

_____
HASAN REFIK GEDLEC, Guarantor

_____
RAMAZAN OMUR ERIM, Guarantor