**FOR PUBLICATION**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------x
In re

SEVEN HILLS, INC.,                                      Chapter 7

Debtor.                                                 Case No.: 08-33642 (MBK)
-----------------------------------------------------------------x

**APPEARANCES:**

Theodore Liscinski Jr., Esq.
265 Davidson Avenue, Suite 200
Somerset, NJ 08873
Attorney for Debtor, Seven Hills, Inc.

Richard S. Yusem, Esq.
P.O. Box 696
31 E. High Street
Somerville, NJ 08876
Attorney for Creditor, CCT Enterprises Corp.

_____

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

This matter comes before the Court on a Motion for Relief from the Automatic Stay filed on behalf of a commercial landlord, CCT Enterprises Corp. ("CCT"), seeking permission to dispossess Seven Hills, Inc., debtor in possession ("Seven Hills"). The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court, dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C.

1

§ 157(b)(2)(G). For the reasons below, the motion is denied, without prejudice to reinstate pending resolution of Seven Hills's motion to assume the underlying lease.[1]

The material facts in this matter are not in dispute. The parties entered into a lease for commercial property, dated October, 1998, which will expire by its natural terms on March 31, 2008 (the "Lease"). The Lease contains an option for renewal, which, among other things, requires that Seven Hills exercise the option at least three months before the tenancy expires (which equates to December 31, 2008), and that there be no outstanding default or breach at the time such notice is given. Over the years, Seven Hills faced difficulties in paying timely its rental payments, causing CCT on several occasions to begin summary dispossess proceedings. Seven Hills resolved those proceedings outside of court by remitting the appropriate payment. On October 1, 2008, during the most recent proceeding before the Superior Court of New Jersey, Seven Hills and CCT resolved the matter by mutually agreeing to the entry of a Consent to Enter Judgment (the "Consent Judgment").

The Consent Judgment permitted Seven Hills to remain in possession of the premises provided that it paid both the rental arrears and its current rent by a set time. Upon compliance with all of the terms and conditions of Consent Judgment, the judgment itself would be vacated. In the event Seven Hills breached any of its obligations under the Consent Judgment, CCT was permitted to seek immediately the issuance of a warrant of removal. Seven Hills did not meet these obligations, and on November 26, 2008, before CCT chose to enforce its rights under the Consent Judgment, Seven Hills initiated the within Chapter 11 bankruptcy proceedings. In the months prior to filing its petition, Seven Hills requested to exercise its option to renew the Lease;

---

[1] Prior to the hearing on CCT's motion for relief from the automatic stay, Seven Hills filed a motion seeking a court order approving assumption of the Lease. A hearing on Seven Hills's motion is scheduled for April 13, 2009.

2

CCT, however, advised Seven Hills that it would not permit such renewal as Seven Hills was then in default.

CCT moves before the Court for relief from the automatic stay for "cause" pursuant to § 362(d)(1) of the Code.[2] CCT wishes to proceed pursuant to the Consent Judgment, and to have issued the warrant of removal against Seven Hills. CCT contends that based on New Jersey law, which governs this matter, *see Butner v. United States*, 440 U.S. 48, 55 (1978) ("Property interests are created and defined by state law."), Seven Hills's tenancy terminated on October 1, 2008, the date of the Consent Judgment. CCT's position is that the Consent Judgment serves as the judgment for possession, because Seven Hills failed to comply with those terms. Resting its argument on *In re Great Feeling Spas, Inc.*, 275 B.R. 476, 477 (Bankr. D. N.J. 2002), CCT argues that Seven Hills tenancy thus terminated pre-petition, thereby allowing for stay relief and prohibiting Seven Hills from assuming the lease under § 365 of the Code as an executory contract. CCT contends, moreover, that the Lease itself shall expire on March 31, 2009, inasmuch as Seven Hills failed to comply with the Lease renewal provisions by being delinquent in rent at the time notice was given. Seven Hills opposes the motion, claiming that it has the ability to make rental payments, with an additional $2,3500 per month to pay the entire arrearages, and, by way of the Consent Judgment, it is permitted to correct the deficiencies. Seven Hills additionally argues that it is entitled to exercise its option to renew the Lease.

The issue before the Court is whether a debtor in possession or trustee maintains a leasehold interest in property, capable of assumption pursuant to § 365, notwithstanding the entry of a consent judgment for possession, where such judgment provides a cure mechanism but

---

[2] Absent contrary indication, all "Code," chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 as amended by the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 ("BAPCPA"), Pub. L. 109–08, 119 Stat. 23. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "FRCP" and "FRE" references are to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, respectively.

is in default at the time of the bankruptcy filing. An ancillary issue is whether a debtor in possession or trustee can exercise an option to renew a nonresidential lease, even though a default or breach of the lease existed at the time notice was due thereunder. For the reasons discussed below, the Court denies stay relief, and holds that Seven Hills's tenancy was not terminated pre-petition due to the entry of the Consent Judgment. Additionally, Seven Hills may to seek to assume the Lease and exercise the renewal option.

The bright-line rule for bankruptcy courts applying New Jersey law is that the judgment for possession terminates nonresidential lease, not the issuance of the warrant for removal. *In re Great Feeling Spas, Inc.*, 275 B.R. 476, 477 (Bankr. D. N.J. 2002); *In re DiCamillo*, 206 B.R. 64, 67 (Bankr. D. N.J. 1997). *See also Vineland Shopping Ctr., Inc., v. De Marco*, 35 N.J. 459 (1961); *Musselman v. Carroll*, 289 N.J. Super. 549 (App. Div. 1996); *Stanger v. Ridgeway*, 171 N.J. Super. 466 (App. Div. 1979). Under the New Jersey Anti-Eviction Act, a tenant may cure a default in rent payments "at any time on or before the entry of a final judgment." N.J.S.A. § 2A:18-55. When applying this provision, state and bankruptcy courts previously faced the question of what constitutes a "final judgment"—was it the entry of a judgment for possession or the issuance of a warrant of removal? In *Stanger*, the New Jersey Appellate Division concluded that the judgment of possession is the requisite "final judgment" for terminating a tenancy, whereas the "warrant of removal is merely the means by which the landlord can enforce the underlying judgment." *Stanger*, 171 N.J. Super. at 473. The *Stanger* court viewed the warrant of removal "akin to a wage execution or any other process to enforce a money judgment." *Id.* Also, concerning the three-day time period between the judgment for possession and the issuance of the warrant of removal (as required by N.J.S.A § 2A:18-57), the *Stanger* court held that "the Legislature simply intended to give the tenant an opportunity to remove his belongings and find

4

other quarters." *Id.* Thus, under New Jersey law, the judgment for possession terminates a leasehold estate.[3]

What distinguishes the case *sub judice* from the above law (and presumably a fact viewed inoperative in *Great Feelings Spa*), is the existence of the Consent Judgment agreed to by the parties. This Court accords greater significance to the effect of the Consent Judgment, which provides a cure mechanism, especially because the Consent Judgment serves neither as a final judgment, nor as an official issuance of a warrant of removal. The Consent Judgment, instead, suspends the eviction process while providing the tenant with an interest in the property, albeit it only a "possessory nexus or toehold in the property." *See DiCamillo*, 206 B.R. at 68 (quoting *In re Morgan*, 181 B.R. 579, 583 (Bankr. N.D. Ala. 1994) ("[A] debtor's right to assume the lease under section 365 would continue to exist only as long as the debtor held 'some possessory nexus or toehold in the property.'")).

Also, a survey of case doctrine reveals that New Jersey law treats consent judgments differently than ordinary judgments. The New Jersey Supreme Court has characterized consent judgments as being "both a contract and a judgment[;] it is not strictly a judicial decree, but rather in the nature of a contract entered into with the solemn sanction of the court." *Cmty. Realty Mgmt., Inc. for Wrightstown Arms Apartments v. Harris*, 155 N.J. 212, 226 (1998) (internal quote and citation omitted). By viewing the consent judgment as a contract, the principles of contract law are invoked. *Id.* Applying this characterization to summary

---

[3] The conclusion reached in *Stanger* has been cited with approval by the New Jersey Supreme Court and the New Jersey Appellate Division. *See Housing Authority of the Town of Morristown v. Little*, 135 N.J. 274, 287 (1994); *Musselman*, 289 N.J. Super. at 555–56. Additionally, two leading cases from the Bankruptcy Court for the District of New Jersey, *Great Feelings Spa* and *DiCamillo*, each conducted a thorough analysis of New Jersey landlord/tenant law in conjunction with Title 11 of the United States Code. This Court, therefore, neither disagrees with nor wishes to disturb that which makes for coherent and scrutable doctrine.

dispossession proceedings, the line of demarcation between a consent judgment and a judgment for possession is unmistakable.

First, in a summary dispossession proceeding, the judgment in favor of the landlord is a judgment for possession. *Somers v. O'Neill*, 102 N.J. Eq. 575, 142 A.1 2 (Ch. 1928). The day after judgment is entered, a tenant may no longer void the judgment by subsequently making payments. *Stranger*, 171 N.J. Super. at 470. A consent judgment, on the contrary, permits a tenant to do precisely just that: to cure past defaults pursuant to a consensual payment schedule, and then to have the judgment vacated. Next, after a judgment for possession is entered, New Jersey provides tenants with a three-day "grace period" to remove belongings and relocate before the accompanying warrant of removal is issued. N.J.S.A. § 2A:18-57; *Stranger*, 171 N.J. Super. at 473. Unlike a judgment for possession, a consent judgment does not authorize a court clerk to issue the warrant of removal three days following the entry of judgment; indeed, the tenant is neither removing belongings nor relocating. Additionally, under New Jersey law, monetary relief is not awarded by a judgment for possession; rather, possession of the premises is returned to the landlord. *Hous. Auth. of the Town of Morristown v. Little*, 135 N.J. 274, 280 (1994). In contrast, under a consent judgment, the tenant continues to remit rent payments and retain possession of the premises.

Against this backdrop, the Court proceeds with its analysis and application of the facts. In October, 2008, to prevent an immediate entry of judgment for possession, both CCT and Seven Hills entered into the Consent Judgment.[4] Contained within that agreement were the following provisions:

> (4) If the Tenant makes all payments required . . . of this agreement, the Landlord agrees not to request a warrant of removal. If the Tenant does not make all payments . . . , the Tenant agrees that the Landlord . . . may file a certification

---
[4] There is no allegation concerning the validity of that Consent Judgment.

> stating . . . that a warrant of removal may then be issued by the clerk. This means that if the tenant fails to make any payment . . . , the tenant may be evicted as permitted by law after the service of the warrant of removal.
>
> (5) This agreement shall end when the Tenant has paid the full amount of rent . . . and then the judgment shall be vacated and the complaint shall be dismissed.

Debtor's Certification in Opposition to Motion, Exhibit B (emphasis omitted). Unlike a judgment for possession, the Consent Judgment *did not* grant CCT possessory rights to the property. Unlike a judgment for possession, the Consent Judgment *did not* permit the court clerk from later issuing the warrant of removal—rather, the Consent Judgment suspended that issuance. Unlike a judgment for possession, the Consent Judgment *did* allow Seven Hills to cure its past defaults pursuant to the terms and conditions of the Consent Judgment. Most importantly, unlike a judgment for possession, the Consent Judgment provided a cure mechanism, namely compliance with the Consent Judgment, which authorized Seven Hills to vacate the judgment. In light of these distinctions, and the fact that New Jersey law treats consent judgments as a contract-judgment hybrid, the Court tweaks the bright-line rule from *Great Feeling Spas* as applied to the instant matter, and finds that the Consent Judgment did not terminate the Lease.

In light of *Harris*, and in construing the Consent Judgment as a contract, this Court now extends *Great Feeling Spas* to incorporate the goals and purposes of § 365. The Bankruptcy Code does not define the term "executory contract," nor does § 365(a) indicate the phrase's intended scope. *In re Columbia Gas Sys., Inc.*, 50 F.3d 233, 238 (3d Cir. 1995). The United States Court of Appeals for the Third Circuit has adopted the "Countryman" definition of an executory contract: "a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v.*

7

*Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989) (quoting Vern Countryman, *Executory Contracts in Bankruptcy, Part 1*, 57 MINN. L. REV. 439, 460 (1973). The point in time used for "testing whether there are material unperformed obligations on both sides is when the bankruptcy is filed," and the materiality of any remaining unperformed obligation is evaluated according to the relevant non-bankruptcy law. *Columbia Gas*, 50 F.3d. at 239–40. Thus, a contract is executory under § 365 if each party has an underperformed obligation at the time of the bankruptcy filing that would constitute a material breach if not performed. *Id.*

At the time Seven Hills filed for bankruptcy, both Seven Hills and CCT had substantial obligations to perform. First, unlike a judgment for possession, the Consent Judgment (or "contract") between CCT and Seven Hills does not replace the underlying Lease, nor relieve either party from their respective obligations. The Consent Judgment, instead, serves as a separate contract with mutual obligations due by each party. Second, under the Consent Judgment, Seven Hills is obligated to pay rental arrears over time and, implicitly, adhere to all the terms, conditions, and responsibilities under the Lease. CCT, in turn, must continue to provide Seven Hills with use and enjoyment of the premises. The Court resolves that at the time of the bankruptcy filing, both respective obligations are material and substantial: As debtor in possession, Seven Hills conceivably is relying on the tenancy and property for the purposes of reorganization, and CCT has of yet no legal authority to oust Seven Hills. Further, both respective obligations are underperformed: Seven Hills must submit rental payments and CCT must continue to provide use and enjoyment (*i.e.*, both parties must comply with the Consent Judgment and the Lease). The Consent Judgment, coupled with the underlying Lease, therefore, comprise an executory contract with concomitant, mutual, and material unperformed obligations.

Accordingly, the Court holds that the Consent Judgment did not terminate the Lease pre-petition; rather, the Consent Judgment and Lease remain subject to the § 365 cure provisions.[5]

Following this conclusion, the Court turns its attention to the issue of whether Seven Hills may exercise its option to renew the Lease. Section 365 of the Bankruptcy Code provides: "[T]he trustee[/debtor in possession], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). This section enables the debtor in possession to maximize the value of the debtor's estate by assuming executory contracts that benefit the estate and rejecting those that do not. *In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 298 (3d Cir. 2000). In cases where the underlying contract or lease has been "validly terminated prior to the institution of the bankruptcy proceedings, [such contract or lease] is not resurrected by the filing of the petition in bankruptcy and cannot therefore be included among the [debtor in possession's] assets." *In re Robertson*, 147 B.R. 358, 361 (Bankr. D. N.J. 1992) (quoting *Kopelman v. Halvajian*, 663 F.2d 463, 467-68 (3d Cir. 1981) (citations omitted). In other cases, such as the present one, where the debtor in possession holds "some possessory nexus or toehold in the property," the debtor in possession's right to assume such contract or lease under § 365 continues to exist. *See*, *supra*, *DiCamillo*, 206 B.R. at 68.

The facts before the Court parallel those in *In re Circle K*, 190 B.R. 370 (B.A.P. 9th Cir. 1996), *aff'd* 127 F.3d 904 (9th Cir. 1997). In *In re Circle K*, the Debtor had entered into a lease, which included an option to renew the lease provided that the lease was not in default and that the Debtor provided adequate notice. The B.A.P. for the Ninth Circuit allowed the Debtor to exercise the option to renew, notwithstanding that the conditions precedent for renewal remained

---

[5] The Court recognizes that this holding may deter landlords from agreeing to enter into consent judgments with delinquent tenants. While this may be true, the Court's holding supports the policy that landlords, such as CCT, should be vigilant in enforcing their rights by immediately having the court clerk issue a warrant of removal upon a tenant's noncompliance of a consent judgment.

unsatisfied at the time of the bankruptcy filing. *Id.* The B.A.P. held that "a debtor who has defaulted prepetition on an unexpired lease may exercise its option to renew that lease without first assuming the lease or curing any prepetition defaults." *Id.* at 375–76. The court concluded that to require assumption before affording the Debtor an opportunity to cure would effectively and impermissively shorten the Debtor's time to assume or reject the lease. *Id.*

The B.A.P. reasoned also that the policy behind § 365 supported such holding, noting that § 365 serves to balance state-law contractual rights of creditors—to receive the benefit of their bargain—with the equitable rights of a debtor under bankruptcy law—to have an opportunity to reorganize. *Id.* at 376. Section 365, the court said, achieves this balance "by forcing the debtor to abide by the contract provisions during pendency of the bankruptcy and cure any prepetition defaults upon assumption while prohibiting the creditor from enforcing any prepetition default remedies." *Id.* (citing 11 U.S.C. §§ 365(b)(1), 365(a)(3)). The Debtor was permitted to exercise the renewal option, the court added, because the creditor would "receive the benefit of its bargain when, on assumption of the lease[, the Debtor is] required to cure all pre- and postpetition defaults." *Id.* at 376.

This Court agrees with the Ninth Circuit that, under § 365 and before the assumption of an executory contract, Seven Hills may cure its pre-petition defaults for unpaid rental payments, which would otherwise have prevented the exercise of its option to renew. Seven Hills provided timely notice to CCT to renew its Lease; however, Seven Hills was in default of the Lease at that time. CCT had bargained with Seven Hills that renewal could occur only in the absence of a default or in breach of the Lease terms. CCT will not lose the benefit of its bargain, because Seven Hills may assume the Lease under § 365 only if Seven Hills cures its pre-petition default and provides adequate assurances of future performance.

The Court finds further support for this determination based on the maxim that "[a] court of equity abhors forfeitures, and will not lend its aid to enforce them." *Jones v. Guaranty and Indemnity Co.*, 101 U.S. 622, 628 (1879). Bankruptcy courts are courts of equity and may apply equitable principles, when appropriate. *In re SubMicron Sys. Corp.*, 432 F.3d 448, 454 n.6 (3d Cir. 2006); 11 U.S.C. § 105(a). The fact that a tenant/debtor is in default before bankruptcy should not prevent this Court from applying equitable principles to prevent the forfeiture of an option to renew.[6] Furthermore, to prevent forfeiture of a debtor's rights, § 365(e)(1) permits a bankruptcy court to invalidate *ipso facto* clauses. 11 U.S.C. § 365(e)(1). "Bankruptcy interdicts *ipso facto* clauses because they lead to the forfeiture of valuable assets and hamper the debtor's rehabilitation or liquidation." *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 833 (Bankr. S.D. N.Y 1996) (internal citation omitted).

In the instant case, Seven Hills's Lease with CCT has not yet terminated, nor is it unexpired. For this reason alone, CCT's motion for stay relief is denied. The above discussion and equitable principles of this Court, moreover, show that Seven Hills has not lost its option to renew, notwithstanding that Seven Hills was in default of the Lease at the time of filing bankruptcy. The Court does not find that Seven Hills forfeited its right to renew the Lease, when § 365 permits Seven Hills to assume the Lease and cure pre- and post-petition defaults. Further, Seven Hills has pending a motion to assume the Lease. Assuming that Seven Hills can satisfy the elements required under § 365(b)(1), CCT will receive the benefit of its bargain (*e.g.*, renewing the Lease with tenants current in their rental payments), while at the same time allowing Seven Hills to renew its Lease and further pursue its right to reorganization. CCT is not without redress, however, because Seven Hills must first demonstrate that it meets all the

---

[6] Courts of equity have long applied equitable principles to tenants delinquent in their rent payments. *See*, *e.g.*, *Red Oaks v. Dorez, Inc.*, 118 N.J. Eq. 198, 203 (1935) ("The right of a tenant to be relieved in equity against forfeiture for non-payment of rent arose very early in the history of the English law.").

11

elements of 11 U.S.C. § 365(b)(1) before this Court will grant an assumption of the Lease. Without passing judgment, based on the track record of Seven Hills's previous delinquent remittances of rental payments, Seven Hills appears to be facing an uphill battle to meet these requirements. The Court will enter the appropriate order.

Dated: March 25, 2009

/s/ Michael B. Kaplan
Honorable Michael B. Kaplan
United States Bankruptcy Judge