Richard S. Yusem, P.A.
P.O. Box 696
31 E. High Street
Somerville, NJ 08876
(908) 526-4900
Attorneys for Creditor CCT Enterprises Corporation

| | |
|---|---|
| IN RE:<br><br>SEVEN HILLS, INC.,<br>            Debtor(s) | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Chapter 11<br><br>Case No. 08-33642 MBK<br><br>Hearing Date: April 13, 2009<br>Oral Argument Requested |

BRIEF IN OPPOSITION TO MOTION TO ASSUME LEASE

STATEMENT OF FACTS

On November 28, 2008, the debtor filed a voluntary petition under Chapter 11. No trustee has been appointed and the debtor was and continues to be authorized to act as a debtor in possession.

The debtor operates a restaurant from premises in a strip center located at Raritan Avenue and 5th Street in Highland Park and leased from CCT Enterprises Corporation, ("CCT"). The lease is dated October, 1998 and is attached as Exhibit A to the Certification of Susan Chung filed in opposition to the debtor's pending motion to assume the lease. The initial term of the lease was for ten (10) years which expired on March 31, 2009, but the lease contains an option to renew for an additional ten (10) years. Despite CCT's position to the contrary, this Court has already ruled that if the debtor is permitted to assume the lease, then the debtor will be deemed to have successfully exercised the option to renew.

During the course of the initial term of the lease the debtor has been habitually late in the payment of its rent, so much so that six summary dispossess actions were filed against the debtor as set forth below.

September 26, 2002;
March 19, 2003;
November 14 2005;
May 11, 2007;
February 1, 2008; and
September 8, 2008

The filing dates of these actions reflect that the debtor's financial problems have been accelerating. This is evidenced by the fact that the first three actions were filed over a three year period, but the last three actions were filed in the eighteen months immediately preceding the

-1-

filing of the petition. The last of these actions resulted in a consent judgment for possession dated October 1, 2008 which obligated the debtor to make six payments against the rent arrearage. The debtor defaulted on these obligations immediately by failing to make the second $2,000 payment which was due on October 1, 2008. Later the debtor tendered a check for $3,686.51 for the fifth payment which was returned NSF, then the debtor failed to make the sixth payment of $2,741.05 due on November 11, 2008, and finally the debtor failed to make the November, 2008 payment of the rent & CAM charges totaling $7,611.84. As a result of the debtor's default under the judgment for possession, CCT sought a warrant for removal which the debtor avoided by filing the petition in this proceeding.

As of the date of the filing of the petition the amount needed to cure the default under the lease totaled $17,642.08. Since the filing of the petition, that amount has grown. The debtor failed to pay a December water/sewer charge of $478.20, plus, if the debtor is to assume the lease, the April, 2009 rent and CAM charges totaling $7,854.45 are also past due. The April rent reflects an increase under the renewal option which increases the monthly rent payment from $6,065.21 to $6,307.82. Therefore, the total sum needed to cure the default under the lease in order to permit assumption is $25,974.09.

Since the filing of the petition the debtor has filed three monthly operating reports covering the months of December through February. These reports not only reflect a failure of the debtor to meets its own projections, but reveal a period of continued losses that are being funded by the debtor over-drafting its operating account and kiting checks. The operating reports reflect losses in the first three months of operations of over $29,000; *see* page 16 of the February monthly operating report; which have resulted in a cumulative shortfall in cash at the end of February totaling $9,679.00. *See* page 2 of the February monthly operating report. This

shortfall in cash is being funded primarily by the debtor over-drafting its operating account which at end of February was over-drafted by more than $7,600. *Id.* Compare these losses to the debtor's projections which as of the end of February the debtor estimated it would be more than $41,000 ahead in cash; a shortfall in the projection of over $50,000 in just three months. *Id.*

The debtor has now filed a motion to assume the lease. The motion fails to provide any information whatsoever as to how and when the debtor will cure the defaults under the lease, nor does it provide any information as regards the ability of the debtor to perform its lease obligations in the future.

The 120 day period following the entry of the order for relief expired on March 29, 2009 and has not been extended. Because CCT believes that the debtor has not and cannot meet its burden to support the grounds for the assumption of this lease, CCT has filed a cross motion to compel the debtor to surrender the premises in accordance with Bankruptcy Code §365(d)(4)(A).

## ARGUMENT

With regard to assumption of non-residential leases, the Bankruptcy Code states in relevant part:

§365. Executory contracts and unexpired leases

> a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
>> (A) cures, or provides adequate assurance that the trustee

-3-

> will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.
>
> * * *
>
> (d) (4)(A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
>
> (i) the date that is 120 days after the date of the order for relief; or
>
> (ii) the date of the entry of an order confirming a plan.

11 *U.S.C.* §365.

In this case the debtor has been authorized to act as a debtor in possession and therefore it has all of the obligations of a trustee. 11 *U.S.C.* §1107(a). The debtor must therefore cure all defaults under the lease, assure future performance, and make CCT whole before it may be permitted to assume the lease. *In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 318 (3d Cir. 2003). If the debtor is permitted to assume the lease, the debtor must assume it entirely and not

just those portions it finds advantageous. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001).

Therefore, to be successful on its motion the debtor must prove that it can:

- Cure, or provides adequate assurance that it will promptly cure all monetary defaults under the lease which total $25,974.09; and
- Provide adequate assurance of future performance under the extended lease term.

The debtor's moving papers do not address either of these requirements and provide no proofs on these matters. The moving papers do not contain any information on any tender of any amount to cure the defaults, the papers do not reveal any plans to tender such amount in the future, nor are there any projections, predictions, explanations or efforts which in any way provide any assurance whatsoever of any future performance under the lease. The failure to provide any proof in these regards is fatal to the debtor's motion. *In re Wireless Data, Inc.*, 547 F.3d 484, 489 (2d Cir. 2008).

Even if we assume for the purposes of argument that the debtor will try to put forth some proof that attempts to satisfy §365(b)(1), that attempt will not be successful.

It is evident from the debtor's cash position reflected in its operating reports that it cannot cure the $25,974.09 default by payment of that amount on the return date of the motion. It is therefore assumed that if the debtor will propose to cure the default, it will propose a prompt cure rather than one which is tendered at the time of assumption.

"Whether a cure is 'prompt' for purposes of § 365(b)(1)(A) depends on the facts and circumstances of each case. E.g., *In re Mako, Inc.*, 102 B.R. 818, 821 (Bankr.E.D.Okla. 1988)

-5-

(quoting *In re Gold Standard at Penn, Inc.*, 75 B.R. 669, 673 (Bankr.E.D.Pa. 1987)) (citing *In re Lawrence*, 11 B.R. 44, 45 (Bankr.N.D.Ga. 1981))". *In re Embers 86th Street, Inc.*, 184 B.R. 892, 901 (Bkrtcy.S.D.N.Y. 1995).

> In determining whether a cure is "prompt", many courts consider several factors, including a debtor's past financial performance, any inequitable conduct engaged in by the non-debtor party, and the remaining term of a lease or relationship between the parties. *See In re Embers 86th Street, Inc.,* 184 B.R. 892, 900-901 (Bankr.S.D.N.Y. 1995) (and cases cited therein); *In re R/P International Technologies, Inc.,* 57 B.R. 869 (Bankr.S.D.Ohio 1985).
>
> \* \* \*
>
> As stated by the Court in *Embers,* adequate assurance of a prompt cure requires that there be a firm commitment to make all payments and at least a reasonably demonstrable capability to do so.

*In re Uniq Shoes Corp.*, 316 B.R. 748, 752 (Bkrtcy.S.D.Fla. 2004).

In the case before this Court, the debtor has failed to make any commitment whatsoever to undertake a prompt cure, nor has the debtor made any attempt at all to demonstrate any capability to do so. These failures coupled with the other factors enumerated in *Embers* and *Uniq* all work against the debtor's ability to successfully argue that it will or even can propose a prompt cure.  CCT's position is bolstered by the fact that there has been no inequitable conduct on the part of CCT.  To the contrary, all of the inequitable conduct has been on the part of the debtor.  The inequity includes the debtor's past financial performance under the lease which has been so abysmal that the debtor's repeated pre-petition defaults resulted in six summary dispossess actions, half of them in the 18 months immediately preceding the filing of the petition.  In its last default before the petition was filed, the debtor signed a consent judgment for possession of the premises, promising to make a series of payments, but defaulted on that

-6-

promise immediately and then later tendered a bad check to CCT that it has still not made good on.

As to the debtor's post-petition financial performance, it too argues against the debtor's capability to make a prompt cure of the lease defaults as well as failing to provide any grounds which support the debtor's obligation to provide adequate assurance of future performance under the lease.

> In assessing adequate assurance of future performance under §365(b)(1)(C), "[t]he test is not one of guaranty, but simply whether it appears that the rent will be paid and other obligations met." *In re THW Enterprises, Inc.*, 89 B.R. 351, 357 (Bankr.S.D.N.Y. 1988). Thus, courts look for evidence of profitability such as demonstrated reductions in operating costs, payroll, and inventory coupled with an increase in sales, *see In re R.H. Neil, Inc.*, 58 B.R. at 971; a plan which would earmark money exclusively for the landlord, *Buchakian v. Musikahn Corp.*, 69 B.R. 55, 56 (E.D.N.Y. 1986); or the willingness and ability of debtor or debtor's assignee to fund the cure payments. *See In re Bygaph, Inc.*, 56 B.R. at 605.

*Embers, supra,* 184 B.R. at 902.

The debtor's post-petition financial performance does not give rise to any appearance that the debtor will be able to pay the rent and meet its other obligations as well.  To be sure, since the filing of the petition, there have been two monetary defaults under the lease: the failure to pay the December water/sewer charge of $478.20 and the failure to pay April's rent and CAM charge of $7,854.45.  Furthermore, nowhere does the debtor demonstrate that its financial condition has improved or that it even can improve and there is no evidence here of profitability. The only financial information provided by the debtor is to be found in its monthly operating reports which reveal that for the first three months of operations ending in February, the debtor has suffered more than $29,000 in post-petition losses and is covering those losses by over-drafting its operating account. Except for over-drafting its account and kiting checks, there does

-7-

not seem to be any plan that would earmark any money exclusively for the landlord nor any willingness or ability to fund any cure payments.

The monthly operating reports reveal that the debtor cannot pay the future obligations due under the lease and meet its other obligations as well.

The debtor has not met and cannot meet any of its obligations imposed by Bankruptcy Code §365(b)(1) and therefore the debtor cannot assume the lease. Presuming that the debtor is not permitted to assume the lease and as more than 120 days has elapsed since the date of the order for relief, Bankruptcy Code §365(d)(4) requires that the debtor immediately surrender the leased premises. CCT has cross moved for an order to that effect.

## CONCLUSION

For the forgoing reasons CCT respectfully requests that this Court deny the debtor's motion to assume the lease of the subject premises and that CCT's cross motion to compel the debtor to immediately surrender the premises be granted.

>                           Respectfully submitted,
>
>                           RICHARD S. YUSEM, P.A.
>                           Attorneys for CCT Enterprises Corporation
>
>
>                           By: /s/ Richard S. Yusem
>                               Richard S. Yusem, Esq.

Dated: April 6, 2009

-8-